# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| SALIH BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   16-cv-1358 |
| | ) | |
| OFFICER JOHN FERMON and THE | ) | |
| CITY OF BLOOMINGTON, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER & OPINION

This matter is before the Court on the Defendants' Motion for Summary Judgment on all four counts of Plaintiff's First Amended Complaint. (Doc. 36). The matter has been fully briefed and is ready for disposition. For the reasons stated below, the Motion for Summary Judgment is GRANTED.

### BACKGROUND[1]

On September 27, 2014, at approximately 2:43 A.M., Bloomington Police Officer John Fermon observed a gray vehicle stop over an intersection's crosswalk. After following the vehicle, Officer Fermon saw it cross over the median lines several times. Accordingly, he activated his emergency lights and initiated a traffic stop.

Officer Fermon approached the vehicle and made contact with the driver, Bathsheba Brooks. Rodney Pillows, Brooks' boyfriend, was the front passenger and

---

[1] Unless otherwise noted, the facts in the following section are taken from the undisputed facts as determined by the Court from the parties' summary judgment briefing. (*See* Docs. 36 and 38). Facts that are immaterial to the disposition of the Motion for Summary Judgment are excluded.

Plaintiff Salih Baker was the rear passenger sitting behind Brooks. About three weeks prior to this incident, Officer Fermon arrested Plaintiff for possessing cocaine and resisting arrest. (*See* Doc. 36 at 2-3; Doc. 38 at 7). Officer Fermon took their identification to his vehicle and radioed for K9 Officer Steve Statz to assist. Officer Fermon intended to have Officer Statz and his canine conduct a "free air sniff" of the vehicle. Since the free air sniff required the occupants of the vehicle to exit, Officer Fermon approached the vehicle a second time to explain the K9 procedure and order the occupants out of the vehicle.

As Officer Fermon explained the K9 procedure from the driver side of the vehicle, Officer Fermon noticed an open bottle of Patron tequila on the floor board in front of Plaintiff. Officer Fermon then noticed that Plaintiff seemed to be clenching something in his right hand.[2] Plaintiff complied with Officer Fermon's request that he exit the vehicle. As he exited, Officer Fermon attempted to grab his right hand to see what, if anything, he was holding. Before he could do so, however, Plaintiff raised his right hand toward his mouth.[3] At this point, Officer Statz informed Officer Fermon that he thought Plaintiff ate something, although he admits in his deposition he could not identify what, if anything, Plaintiff swallowed.

After handcuffing Plaintiff, the officers thoroughly searched Plaintiff's person

---

[2] The parties dispute this fact. Officer Fermon asserts that he saw Plaintiff clenching a small baggie containing a white, powdery substance which he believed—based on his experience—to be crack cocaine. Plaintiff asserts that he did not have any narcotics on his person at that time.

[3] The parties dispute the characterization of this fact. Plaintiff asserts that he simply wiped his face. Officer Fermon asserts that, based on information relayed by Officer Statz, Plaintiff put the suspicious baggie into his mouth and swallowed it. There is no dispute that Plaintiff moved his hand toward his mouth.

in an attempt to find the baggie in case Plaintiff did not, in fact, eat it. After finding no evidence of drugs, the officers attempted to remove any substances from Plaintiff's mouth and had Plaintiff spit on the ground, ultimately revealing no drugs. After a search of the vehicle and the ground near where Plaintiff allegedly ate the baggie, the officers found no evidence of drugs, only the open bottle of tequila. Officer Fermon therefore believed that Plaintiff had already swallowed the baggie containing what he believed to be crack cocaine. Officer Fermon then placed Plaintiff in the front seat of his squad car and issued him a citation for illegal transportation of alcohol as a passenger.

Officer Fermon brought Plaintiff to the McLean County Jail where jail officials directed him to take Plaintiff to the hospital to address any medical concerns associated with swallowing crack cocaine. They arrived at St. Joseph Medical Center at approximately 3:42 A.M. The attending doctor, Dr. Darrell Looney, did not notice any symptoms of cocaine ingestion after observation and physical examinations. Nevertheless, the doctor and nurses provided Plaintiff with charcoal and sorbitol; charcoal neutralizes any toxic substances, and sorbitol flushes the digestive system to allow foreign substances or objects to pass through. Plaintiff did not object to taking charcoal and sorbitol because he wanted to show his innocence. Plaintiff also did not object to doctors and nurses taking an x-ray to look for the baggie in his body. After about two hours of waiting, Plaintiff did not pass any baggie of cocaine nor did his x-

ray show a baggie's presence in his body.[4] At approximately 7:30 A.M., Plaintiff received clearance for discharge and Officer Fermon brought him back to the McLean County Jail.

After bringing Plaintiff back to the jail, Officer Fermon wrote a probable cause statement asserting the existence of probable cause that Plaintiff obstructed justice. At the jail, officials continued to observe Plaintiff for any foreign substances that may pass as a result of taking sorbitol. Plaintiff remained in an observation cell for about one week. Neither drugs nor a baggie were ever recovered.

Later on September 27, 2014, an Assistant State's Attorney, Ashley Scarborough, submitted a verified statement of arrest to a judge. That same day, a judge signed the statement of arrest, thus concluding that Officer Fermon had probable cause to arrest Plaintiff for obstructing justice and to detain him in lieu of bond. On September 28, one day later, Officer Fermon wrote a more detailed police report of the incident.[5] After Officer Fermon submitted his reports to the State's Attorney's Office, he had no further involvement with the criminal proceedings relevant to Plaintiff's arrest on September 27, 2014.

A grand jury convened on October 8, 2014 to consider whether to indict Plaintiff for obstruction of justice. Officer Fermon did not testify; instead, Sergeant Randall Wikoff testified based on knowledge he obtained from reading reports on this

---

[4] Dr. Looney testified that, depending on the person taking the sorbitol, it may take minutes, hours, days, or a week to pass a foreign substance in the digestive system. (Doc. 38-2 at 26-27).

[5] Plaintiff asserts that Officer Fermon misled the prosecutor and Grand Jury by making misstatements in his reports. Officer Fermon and the City of Bloomington dispute this assertion.

matter. Later that same day, the grand jury returned a bill of indictment charging Plaintiff with obstruction of justice.

On October 14, 2016, Assistant State's Attorney, Patrick Sheehan, entered an order of nolle prosequi regarding Plaintiff's obstruction of justice charge, thus terminating its prosecution.[6]

On March 20, 2017, Plaintiff filed his First Amended Complaint, in which he alleges that Officer Fermon is liable under 42 U.S.C. § 1983 because he violated Plaintiff's Fourth Amendment rights. (Doc. 22). In Count I, Plaintiff alleges unreasonable seizure. (Doc. 22 at 4). In Count II, Plaintiff alleges unreasonable search. (Doc. 22 at 5). And in Count III, Plaintiff alleges unreasonable detention. (Doc. 22 at 6). Plaintiff also states a supplemental state law claim of malicious prosecution against Officer Fermon and the City of Bloomington (Count IV). (Doc. 22 at 6-7).

On May 1, 2018, Defendants filed a Motion for Summary Judgment (Doc. 36) seeking summary judgment on all counts of Plaintiff's First Amended Complaint. (Doc. 36 at 1). Defendants argue that Plaintiff cannot show that Officer Fermon unreasonably seized, searched, and detained Plaintiff on September 27, 2014, as is required to violate the Fourth Amendment. (*Id.*). Defendants further contend that,

---

[6] The parties dispute the effect of this *nolle prosequi* order. On September 13, 2016, Plaintiff and his counsel agreed with Mr. Sheehan to keep Plaintiff's obstruction of justice charge active notwithstanding the plea deal arranged for two other, unrelated charges. According to the plea hearing transcript from September 13, 2016, (Doc. 38-2 at 101-02) and the signed plea deal from August 11, 2016, (Doc. 38-2 at 105). The obstruction of justice charge was not part of that initial *nolle prosequi*. However, the Affidavit of Patrick Sheehan affirms that the obstruction of justice charge was later terminated in consideration for the plea deal arranged on August 11, 2016, as shown in the order of *nolle prosequi* from October 14, 2016. (Doc. 40-1). The parties dispute whether the *nolle prosequi* indicates Plaintiff's innocence.

even if Plaintiff could establish constitutional violations, qualified immunity bars Plaintiff's claims. (*Id.*). Defendants lastly argue that Plaintiff cannot succeed in establishing the elements of his state law malicious prosecution claim. (Doc. 36 at 1-2).

Plaintiff timely filed his Response in Opposition to Defendants' Motion for Summary Judgment on May 29, 2018. (Doc. 38). Plaintiff argues that, viewing the evidence in the light most favorable to him, genuine issues of material fact exist as to the underlying facts of Plaintiff's constitutional claims. (Doc. 38 at 1). Specifically, Plaintiff argues that whether Officer Fermon had probable cause to seize, search, and continue to detain Plaintiff (Counts I, II, and III, respectively) rests on an underlying factual dispute. (*Id.*). Plaintiff further responds that the record supports all elements of his malicious prosecution claim. (*See* Doc. 38 at 17).

Defendants timely filed their reply on June 12, 2018. Thus, this matter is ripe for decision.

## LEGAL STANDARDS

Courts grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A grant of summary judgment is appropriate only where the movant shows that the evidence could not justify a reasonable jury finding in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (defining a genuine dispute of material fact). In other words, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Id.* at 248. At this stage, courts view evidence in the

light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *See Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). However, when the parties "tell two different stories, one of which is blatantly contradicted by the record, . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To survive a defendant's properly supported motion for summary judgment, the plaintiff "must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Specifically, "[i]n a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). The plaintiff-nonmovant cannot survive summary judgment by simply asserting that a material fact is genuinely disputed; it must instead "support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In the event a nonmovant fails to meet its burden, courts may "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see Celotex Corp.*, 477 U.S. at 323 (stating that the

defendant-movant "'is entitled to judgment as a matter of law'" where "the nonmoving party has failed to make a sufficient showing on an essential element of her case").

DISCUSSION

Officer Fermon argues that he is entitled to summary judgment on Plaintiff's § 1983 claims on two independent grounds: (1) that the undisputed facts show no constitutional violations, and (2) that he is immune from suit regarding those claims because of qualified immunity. (Doc. 36). Both Defendants argue that they are entitled to summary judgment on Plaintiff's supplemental state law claim of malicious prosecution because Plaintiff cannot present sufficient evidence to establish the elements of his claim. The Court addresses these arguments in turn.

## I.   Officer Fermon Is Entitled To Qualified Immunity On Plaintiff's Constitutional Claims.

Plaintiff makes three arguments regarding his arrest and detention on September 27, 2014. First, he claims that Officer Fermon unlawfully arrested him because there was no probable cause to arrest him for obstruction of justice (Count I). (Doc. 38 at 12-13). Second, he argues that Officer Fermon unconstitutionally searched him when medical staff conducted an x-ray of his body and provided him with charcoal and sorbitol to drink in order to safely pass evidence of drug possession through his digestive system. (Count II). (Doc. 38 at 15-17). Third, Plaintiff claims that Officer Fermon unlawfully failed to release him from police custody when Officer Fermon uncovered no evidence that Plaintiff swallowed a baggie of cocaine (Count III). (Doc. 38 at 13-15). Because the Court finds that qualified immunity protects Officer Fermon, the Court will not reach the merits of Plaintiff's constitutional claims.

Qualified immunity "shields public officials from civil liability," including police officers. *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017). Courts deciding a defendant's motion for summary judgment based on qualified immunity "consider '(1) whether the facts, taken in the light most favorable to the plaintiff [nonmovant], show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time.'" *Estate of Clark v. Walker* 865 F.3d 544, 550 (7th Cir. 2017) (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009)).

Plaintiffs bear the burden of establishing that, even assuming the constitutional violation occurred, that "the right at issue was clearly established." *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). "A right is clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the . . . constitutional question beyond debate." *Allin*, 845 F.3d at 862 (quoting *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015)). In other words, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

In the context of probable cause disputes under the Fourth Amendment, the Seventh Circuit recognizes the doctrine of "arguable probable cause" when determining whether qualified immunity shields police officers from suit. *See Hurt v. Wise*, 880 F.3d 831, 841 (7th Cir. 2018); *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010) (quoting *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001)). "Arguable probable cause" exists where a reasonable officer "in the same

circumstances and . . . possessing the same knowledge as the officer in question <u>could have reasonably believed</u> that probable cause existed in light of well-established law." *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)) (emphasis added). The "arguable probable cause" doctrine entitles police officers to qualified immunity where "the arresting officer[ ] 'reasonabl[y] . . . could have believed the arrest to be lawful" even where, in hindsight, no probable cause existed. *Hurt*, 880 F.3d at 841. In sum, qualified immunity provides police officers "with an 'additional layer of protection against civil liability' if . . . they did not have probable cause." *Carmichael*, 605 F.3d at 459 (quoting *Williams*, 269 F.3d at 781). "In the Seventh Circuit, '[i]f a case involves a question of whether probable cause existed to support an officer's actions, the case should *not* be permitted to go to trial if there is any reasonable basis to conclude that probable cause existed." *Gibbs v. City of Chicago*, No. 12-cv-0566, 2014 WL 1031440, at *3 (N.D. Ill. March 18, 2014) (quoting *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995)) (emphasis in original).

Officer Fermon argues that he is entitled to summary judgment on qualified immunity grounds because he had "arguable probable cause" to believe Plaintiff swallowed contraband, thereby obstructing justice. (Doc. 36 at 19-20). Under Illinois law, an officer has probable cause to believe a person obstructs justice where, "with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly... [d]estroys, alters, conceals or disguises physical evidence." 720 ILCS 5/31-4(a)(1). He argues that, even if the Court assumes that Plaintiff did not actually have a baggie of a white powdery substance in his hand,

Plaintiff's history with cocaine possession—and Officer Fermon's knowledge of that history—coupled with Officer Statz's assertion that Plaintiff ate something and Plaintiff's swipe of his hand over his mouth, would provide any reasonable officer with sufficient reason to believe that Plaintiff obstructed justice by swallowing contraband. (Doc. 36 at 19-20).

Plaintiff responds that his "right to be free from arrest and search unsupported by probable cause was clearly established at the time of the arrest." (Doc. 38 at 20). He continues that Officer Fermon violated his clearly established rights when Officer Fermon arrested him for obstruction of justice "after medical tests revealed that Plaintiff had no foreign or illegal substances in his body." (Doc. 38 at 21). However, Plaintiff does not respond to Officer Fermon's argument that "arguable probable cause" existed. Since "arguable probable cause" would cloak Officer Fermon's actions, Plaintiff did not meet his burden as the nonmovant on summary judgment. And since the standard of probable cause differs from the "arguable probable cause" standard pursuant to the qualified immunity defense, *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015), Plaintiff cannot survive summary judgment by simply repeating the same arguments submitted in regard to the alleged lack of <u>actual</u> probable cause. In other words, the issue raised by Officer Fermon's defense of qualified immunity is not whether he <u>actually</u> had probable cause, but whether Officer Fermon <u>reasonably believed</u> that he had probable cause, even if the subsequent medical testing yielded no evidence that obstruction of justice occurred. *See Hurt*, 880 F.3d at 841; *Burritt*, 807 F.3d at 250.

Courts in the Seventh Circuit have addressed issues of "arguable probable cause" regarding obstruction of justice arrests. *See, e.g.*, *Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n.13 (7th Cir. 2003) (noting that a factual dispute precluded summary judgment over arguments of actual and "arguable probable cause"); *Moriconi v. Koester*, No. 11-cv-3022, 2014 WL 5609279, at *4 (C.D. Ill. Nov. 4, 2014) (rejecting arguable probable cause because the arresting officer was "on notice that he had no probable cause to arrest [the plaintiff] for obstruction"); *Nawrocki v. Scully*, No. 05 C 1466, 2006 WL 1735294, at *9-10 (N.D. Ill. June 19, 2006) (finding that an officer could have reasonably, though mistakenly, interpreted facts to establish probable cause); *Sagat v. Gramza*, No. 98 C 2507, 1999 WL 14499, at *8 (N.D. Ill. Jan. 8, 1999) (finding that qualified immunity shielded the officer from suit where "the facts created an impression that [obstruction of justice] occurred").

In *Nawrocki*, for example, the court concluded that, since a credible witness relayed information to the police suggesting that the plaintiff failed to tell the truth in an investigation, the police reasonably believed that the plaintiff's dishonesty constituted the crime of obstruction of justice. 2006 WL 1735294, at *10.

Likewise, the Court finds that Officer Fermon is entitled to summary judgment because, even if a jury were to find that Plaintiff never actually possessed drugs on the night in question, no reasonable jury could conclude that Officer Fermon's belief that he had probable cause to believe Plaintiff obstructed justice was unreasonable. In this Court's opinion, any reasonable police officer in Officer Fermon's position would have made the logical connection that Plaintiff probably ate contraband given the following undisputed facts: (1) that Officer Fermon arrested Plaintiff for

possessing cocaine (among other charges) a mere twenty days before the arrest in question (Doc. 38 at 7; Doc. 38-1 at 116-18), (2) that Officer Fermon tried to restrain Plaintiff's right hand to see what, if anything, he was holding because thought he saw a substance resembling crack cocaine in his right hand[7] (*see* Doc. 38 at 5, 8; Doc. 40 at 3), (3) that Officer Statz informed Officer Fermon that Plaintiff ate something from his right hand when Plaintiff raised his right hand to his mouth[8] (Doc. 36 at 6; Doc. 36-1 at 3; Doc. 38 at 8; Doc. 38-1 at 126; Doc. 38-2 at 8, 94-95), and (4) that no drugs were subsequently found on Plaintiff's person or in the surrounding area (Doc. 38 at 5-6). Because well-settled law allows police officers to rely on their experience and training, *see United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015), the totality of the facts and circumstances at the time of arrest, *see Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013), and credible witness statements, *see Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007), when making an on-scene determination of probable cause, Officer Fermon did not "knowingly violate the law" when he arrested, searched, and detained Plaintiff for obstructing justice. *See Allin*, 845 F.3d at 862 (quoting *Mullenix*, 136 S. Ct. at 308).

---

[7] Plaintiff never disputes that Officer Fermon genuinely believed that he thought Plaintiff held a suspicious baggie in his right hand. (Doc. 38 at 4-5, 8). Rather, Plaintiff only disputes that he actually had anything in his right hand. (*Id.*) Thus, the Court treats Officer Fermon's belief as an undisputed fact, even if a jury could reasonably find that the belief was incorrect. *See* Fed. R. Civ. P. 56(e)(2).

[8] The record shows—and Plaintiff does not expressly dispute—that Officer Statz "informed Officer Fermon that the Plaintiff had eaten what he had in his hand." (*See* Doc. 38 at 5, 10; Doc. 40 at 8). Plaintiff responds only that Officer Statz did not specifically see "any item enter Plaintiff's mouth" and "never saw Plaintiff swallow any items." (*Id.*). Notwithstanding the latter facts being in dispute, the Court treats Officer Statz's statement to Officer Fermon as an undisputed fact. *See* Fed. R. Civ. P. 56(e)(2).

It seems that Plaintiff thought it sufficient to refute the existence of "arguable probable cause" by simply referring the Court to Officer Fermon's lack of actual probable cause. In other cases, it may very well be that facts relevant to the actual probable cause inquiry are disputed such that a court cannot make a determination of whether "arguable probable cause" exists. *See*, *e.g.*, *Morfin*, 349 F.3d at 1000 n. 13. ("Because the facts [within the officer's] knowledge at the time of the arrest are a matter of dispute between the parties, summary judgment on the basis of 'arguable probable cause' also is inappropriate."). But here, Plaintiff only states he did not possess any contraband and that Mr. Pillows never saw him with drugs. He does not point to any factual disputes that are relevant to Officer Fermon's belief that Plaintiff held a baggie of contraband. For example, Plaintiff does not address whether in fact his hand was ever clenched. He does not address Officer Fermon's belief that his hand was clenched. He does not mention whether Officer Fermon looked at his hand. He does not dispute that Officer Fermon attempted to grab his right hand after he exited the vehicle. Had Plaintiff mentioned a single disputed fact that would undermine whether Officer Fermon was reasonable to believe Plaintiff held a baggie of contraband, the Court would not find summary judgment to be appropriate. But here, the undisputed facts do not cast any doubt on the reasonableness of Officer Fermon's belief.

Moreover, Officer Statz's statement to Officer Fermon corroborated Officer Fermon's belief that Plaintiff had contraband in his hand that Plaintiff swallowed, even assuming, in hindsight, that his belief was wrong. *See Holmes*, 511 F.3d at 680 (7th Cir. 2007) (stating that "[f]ellow law enforcement personnel are among the

witnesses whose accounts the arresting officer may rely upon" when making an on-scene determination of probable cause); *Wollin v. Gondert*, 192 F.3d 616, 625 (7th Cir. 1999) (reaffirming that, "[s]o long as a reasonably credible witness . . . informs the police that someone has committed, or is committing, a crime . . . [the officers'] actions will be cloaked with qualified immunity [even] if the arrestee is later found innocent"); *Nawrocki*, 2006 WL 1735294, at *9 (citing *Smith v. Lamz*, 321 F.3d 680, 685 (7th Cir. 2003)). Moreover, Pillows confirmed that the officers were discussing Plaintiff swallowing something as he got out of the car. (Doc. 38-1 at 91) ("But I know I heard him saying that he's swallowing something, he's trying to swallow something.").

To be clear, immunity applies to all three of Plaintiff's constitutional claims because they all stem from Officer Fermon's reasonable on-scene determination of probable cause to believe that Plaintiff obstructed justice.[9] *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917 (2017) (clarifying that the existence of probable cause is the central issue in a Fourth Amendment suit); *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016) (clarifying that, in the context of a search, the existence of exigent circumstances "allows a warrantless search when an emergency leaves police insufficient time to seek a warrant," such as "when police fear the imminent destruction of evidence"); *Mullenix*, 136 S. Ct. at 309 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)) (asserting "the principle that warrantless searches <u>not</u>

---

[9] As to the detention, Dr. Looney testified that, depending on the person taking the sorbitol, it may take minutes, hours, <u>days, or a week </u>to pass a foreign substance in the digestive system. (Doc. 38-2 at 26-27). Plaintiff has presented nothing that disputes this fact.

supported by probable cause and exigent circumstances violate the Fourth Amendment"); *Anderson*, 483 U.S. at 641 (holding that police officers are entitled to summary judgment where, "in light of the clearly established principles governing warrantless searches, [the officers] could, as a matter of law, reasonably have believed that the search . . . was lawful"); *Gutierrez v. City of East Chicago*, No. 2:16-CV-111, 2016 WL 5819818, at *6 (N.D. Ind. Sept. 6, 2016) (citing *Kentucky v. King*, 563 U.S. 452, 460 (2011)) (clarifying that exigent circumstances justifying a warrantless search include where a person requires emergency assistance "to protect [someone] from imminent injury" or "to prevent the imminent destruction of evidence"). In other words, Officer Fermon did not "knowingly violate the law" when he seized, searched, and detained Plaintiff because he had "arguable probable cause" for his actions. *See Allin*, 845 F.3d at 862 (quoting *Mullenix*, 136 S. Ct. at 308).

Therefore, for the reasons discussed above, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's unreasonable seizure, search, and detention claims (Counts I, II, and III, respectively) on the grounds that qualified immunity shielded Officer Fermon's actions.

## II. Plaintiff Cannot Establish All The Elements Of Malicious Prosecution Under Illinois Law.

Officer Fermon and the City of Bloomington next argue that they are entitled to summary judgment on Plaintiff's state law claim of malicious prosecution. They contend that Plaintiff cannot present sufficient evidence to establish all the elements of the claim. (*See* Doc. 36 at 13-17).

"To establish a claim for malicious prosecution under Illinois law, plaintiffs must establish five elements: (1) commencement or continuation of an original proceeding [by the defendant]; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (citing *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 654 (2006)). "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (quoting *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996)).

The first element of an Illinois malicious prosecution claim—the "commencement or continuation of an original proceeding"—ordinarily refers to the <u>prosecutor</u> of the particular criminal action. *See Reed v. City of Chicago*, 77 F.3d 1049, 1053-54 (7th Cir. 1996) (citing *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., *concurring*)) (holding that "a malicious prosecution action against police officers is 'anomalous'" since "the State's Attorney, not the police, prosecutes a criminal action"). *"[T]he chain of causation* [between an arresting officer's involvement and the 'commencement or continuation of an original proceeding'] *is broken by an indictment*, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements by the officers to the prosecutor." *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017) (quoting *Reed*, 77 F.3d at 1053) (emphasis in original). In other words, "a plaintiff may not maintain a malicious-prosecution claim against an arresting officer without first showing 'some postarrest action which influenced the prosecutor's decision to indict.'" *Id.* (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 902 (7th Cir. 2001)). While a

police officer's "allegedly false statement constitutes a post-arrest action," plaintiffs must present evidence to show that such allegedly false statements "influenced the prosecutor's decision to indict, or that the prosecutor relied on it to obtain the indictment." *Id.* Absent evidence showing that the arresting officer himself influenced the indictment process, "there is no basis to infer that [an arresting officer's] allegedly false report precluded the grand-jury indictment from breaking the chain of causation between" the arrest and the prosecution. *Id.*

Defendants argue that Plaintiff cannot present evidence showing "that Officer Fermon pressured, influenced, or made misstatements to the prosecutor," as required by the first element of Plaintiff's claim. (Doc. 36 at 14). They rely primarily on *Colbert* to argue that, because Officer Fermon did not testify before the grand jury and because Plaintiff cannot produce any evidence suggesting that Officer Fermon otherwise influenced the indictment process through misstatements, the chain of causation required under the first element is broken. (*Id.*). The Court disagrees.

It is true that *Colbert* held that absent the production of specific evidence that an officer himself influenced or pressured the indictment process with falsities, a plaintiff will not be able to establish the first element of his malicious prosecution claim. *See* 851 F.3d at 655. *Colbert* explained that it is not enough to simply allege that there are false statements in a police report; rather, a plaintiff must provide facts establishing a <u>connection</u> between (1) the purported misstatement, and (2) the prosecutor's decision to indict and the success in obtaining the indictment. *See* 851 F.3d at 655.

In *Colbert*, an officer made an alleged false statement in an arrest affidavit. *Id.* That officer did not testify before the subsequent grand jury. *Id.* The intervening indictment was secured by the testimony of an officer who was also on the scene of the incident. *Id.* at 655. Importantly, there was no indication before the court that the indictment was secured by the allegedly false statements of the officer. *Id.*

Unlike in *Colbert*, there is evidence here of a direct connection between Officer Fermon's statements and the indictment. In this case, the Court can see from the transcript of the grand jury proceedings that the testifying officer, who was not on the scene of Plaintiff's arrest, had nothing to offer the jurors other than what was either explicitly in the reports Officer Fermon prepared or conclusions the testifying officer drew from those reports. It is clear from the transcript the testifying officer's conclusions are based directly on Officer Fermon's reports. Thus, there is a clear connection between the Officer Fermon's reports and the indictment.

A plaintiff must provide facts establishing a <u>connection</u> between (1) the purported misstatement, and (2) the prosecutor's decision to indict and the success in obtaining the indictment. *See Colbert*, 851 F.3d at 655. The Court finds that a sufficient connection between Officer Fermon's reports and the resulting indictment has been satisfied here.

As for the second element of a malicious prosecution claim, the plaintiff bears the burden of proving that the prosecutor terminated the relevant criminal proceedings in the plaintiff's favor. *See Thompson v. City of Chicago*, 722 F.3d 963, 978 (7th Cir. 2013) (citing *Swick*, 169 Ill. 2d at 512-13). Here is where Plaintiff's claim stumbles.

"[A] criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused." *Swick*, 169 Ill. 2d at 513. A prosecutor's abandonment of criminal proceedings "is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused." *Id.* Dismissal of a criminal charge does not imply innocence "when it is part of a plea bargain." *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) (applying *Swick*, 169 Ill. 2d at 512-513); *see also Evans v. City of Chicago*, 434 F.3d 916, 923 n.16 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013), (discussing that a guilty plea, in consideration for a *nolle prosequi*, means that the defendant "believe[s] that if the matter had gone to trial, it would [have] result[ed] in a conviction").

Thus, even though the Court finds Plaintiff has raised sufficient evidence linking Officer Fermon's misstatements to the indictment, his malicious prosecution claim fails because he cannot sustain the second element of the claim. Defendants assert that the *nolle prosequi* regarding the obstruction of justice claim "was entered *in consideration of* the Plaintiff's pleas in two other criminal cases." (Doc. 36 at 15) (emphasis in original). Attached to Defendants' Motion is the Affidavit of Patrick Sheehan, the Assistant State's Attorney who entered the relevant *nolle prosequi* orders. (Doc. 36-6). The affidavit plainly states that "[o]n October 14, 2016, an order of *nolle prosequi* was entered on [Plaintiff's obstruction of justice charge]" and that the order of *nolle prosequi* was arranged "as part of, and in consideration of, Plaintiff's pleas" on the other criminal charges. (Doc. 36-6 at 1).

In response, Plaintiff sidesteps the October 14 *nolle prosequi* order and, instead, argues that "[t]he State's Attorney's indication that it was dismissing [the obstruction of justice charge] is not consistent with the plea agreement it signed with Plaintiff [on August 11, 2016] or the Court transcript from Plaintiff's plea hearing on September 13, 2016." (Doc. 38 at 18). Accordingly, Plaintiff argues that the facts elicited in Affidavit of Patrick Sheehan are disputed because the September 13 hearing transcript shows that the obstruction charge was not part of the plea deal regarding the other criminal proceedings. (Doc. 38 at 12, 18; Doc. 38-2 at 101-02).

The fact that the August 11, 2016, plea deal did not consider the obstruction charge is immaterial. On October 14, 2016, a separate order of *nolle prosequi* was entered that specifically dismisses the obstruction of justice charge "in consideration for [Plaintiff's] pleas" in the other criminal proceedings.[10] (Doc. 40-1). Thus, there is no evidence in the record that could justify a finding that the termination of Plaintiff's obstruction of justice charge indicates his innocence in the matter. Accordingly, Defendants are entitled to judgment as a matter of law since all five elements of the malicious prosecution claim must be present and there is no need to comment further on the remaining elements.

For these reasons, the Motion for Summary Judgment is GRANTED as to Plaintiff's malicious prosecution claim (Count IV).

---

[10] Since the evidence plainly contradicts Plaintiff's version of the facts, the Court views the facts according to the record in deciding this Motion. *See Scott*, 550 U.S. at 380.

## Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 36) is GRANTED. CASE TERMINATED.

SO ORDERED.

Entered this <u>26th</u> day of June, 2018.


s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
